IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL WIDMER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-cv-0787-MJR-SCW |
| | ) |
| UNKNOWN PARTY, | ) |
| SARA DILLMAN, | ) |
| and JOHN DOES, | ) |
| | ) |
| Defendants. | ) |

# ORDER

**REAGAN, District Judge:**

### A.   Introduction and Procedural Overview

Plaintiff originally filed a § 1983 case alleging interference with his mail at Menard Correctional Center in Case No. 13-cv-0663. That case was set for a hearing on injunctive relief. Ultimately, the Court determined that Plaintiff's claims were not all related to each other, and split the mail claims off into this case (Doc. 1).

United States Magistrate Judge Stephen C. Williams then held a hearing on Plaintiff's request for injunctive relief in this case on October 9, 2013. Judge Williams ultimately recommended that the undersigned District Judge deny (at that time) the request for injunctive relief (*see* Docs. 14 & 17). The undersigned followed that recommendation, adopting Judge Williams' findings and conclusions via Order dated November 8, 2013 (Doc. 25). The case comes now before the Court on three motions filed by Plaintiff (Docs. 15, 30, 33).

In these motions, Plaintiff renews his requests for injunctive relief. As an aside, Plaintiff originally asserted the claims against unknown "John Doe" defendants. While the Illinois Attorney General's office provided representation to these unknown defendants at the October 9, 2013 hearing, and for the limited purpose of that hearing, Plaintiff has still not identified those

1

Defendants. He has named Sara Dillman, the mailroom services supervisor, although she has neither appeared nor answered the complaint at this time. The named Defendants have therefore not responded to any of the pending motions. Because it is apparent to the Court on the existing record that Plaintiff is not entitled to the relief he seeks, the Court will take up these motions at this time in the interests of judicial economy.

      B.      **Factual Background**

Plaintiff filed a motion styled "Part 2 of Pending Emergency Motion for Injunctive Relief" (hereinafter "First Motion") on December 9, 2013 (Doc. 15). Plaintiff's First Motion appears to be directed at Corrections Officers Davis, Lindberg, and Kempfer (Doc. 15). The allegations in the motion relate not to the instant case but to another case which Plaintiff has filed: Widmer v. Kempfer (13-cv1131-MJR-DGW, Doc. 1). Because Plaintiff initially asserted his claims against only John Doe employees in this case, he was instructed to file an amended complaint (Doc. 21). When he did so, he asserted claims against Lts. Kempfer and Lawless, which the district court found unrelated to Plaintiff's mail claims, and severed them into separate cases (Docs. 24, 28). The instant case continues to include only Plaintiff's allegations against mailroom employees for repeatedly delaying and opening his privileged legal correspondence (Doc. 1).

In his First Motion, Plaintiff requests that the Court "set a hearing as soon as possible," apparently to "enjoin the defendants from a continued course of conduct to intentionally inflict harm and serious injury to [him]" (Doc. 15). Plaintiff alleges that on October 8, 2013, Corrections Officer Lindberg placed Plaintiff in handcuffs "as tight as he could get them" (Doc. 15). Plaintiff further alleges that he "was violently assaulted by c/o Kempfer and c/o Lindberg on 10-8-13 without any provocation," and that Corrections Officers Davis, Kempfer, and Lindberg promised "future assaults" against Plaintiff if he continued to file grievances, or put their names in his paperwork (Doc. 15).

Plaintiff attached a "Statement to the Court" to his First Motion in which he alleges that "deft Korando" told Plaintiff that Korando "had a place for snitches," and also told the inmates celled near Plaintiff that he was a snitch (Doc. 15). Plaintiff further alleges that Corrections Officers Kempfer, Davis, and Lindberg have repeatedly kicked the door of his cell and "scream[ed] snitch in 645 . . ." (Doc. 15). Plaintiff states that he was "held without [his] legal mail and property" until the day before a court hearing on October 9, 2013, and that after taking Plaintiff to retrieve his legal documents, "c/o Lindberg back handed [him] with a closed fist in [his] face chipping [his] tooth" (Doc. 15). Additionally, Plaintiff alleges that "[a]t least 8 officers and Sgt. Shurtz were in the immediate area watching," and that Lindberg threatened Plaintiff with further retaliation if he kept "snitching" (Doc. 15). Plaintiff also attached an "Emergency Grievance" containing the same allegations (Doc. 15, p. 6).

Plaintiff filed an Amended Motion for Injunctive Relief (Second Motion) on December 17, 2013 (Doc. 30). Specifically, Plaintiff requests that the Court "enjoin the defendants from continuing to obstruct [his] outgoing US legal and privilieged (sic) mail . . . ." (Doc. 30). In this motion, Plaintiff alleges that his clearly marked, outgoing legal and privileged mail is "being obstructed and returned to [him] by the defendants, who are citing 'insufficient funds' in some instances" (Doc. 30). Plaintiff attached a "Request for Investigation," which he sent to the FBI on September 28, 2013 (Doc. 30, pp.2-6). In this request, Plaintiff alleges that IDOC employees have "intentionally and knowingly" obstructed his legal and non-legal mail addressed to his "attorneys of record," as well as mail addressed to the courts(Doc. 30 p. 2). Plaintiff alleges that Corrections Officer Joseph, an officer at Stateville Correctional Center, told him that "somebody is messing with [him]," and to send his legal mail out under someone else's name "or it wouldn't go out" (Doc. 30, p. 3). Plaintiff further notes his belief that Tracy Engelson, Warden Lemke, and Director Godinez are "conspiring to obstruct [his] mail" (Doc. 30, p. 3).

3

Plaintiff attached a "Timeline" to the FBI request, which details several events that occurred at Stateville (Doc. 30, pp. 4-5). Plaintiff alleges that his legal documents were taken from him, and as a result "at least in part," he lost a hearing for parental rights (Doc. 30, p.4). Plaintiff also alleges that he was held without hygiene products, underwear, socks, or a pencil (Doc. 30, p. 4). He alleges that on August 14, 2013, Corrections Officer Joseph returned legal mail which Plaintiff had sent on July 31, August 7, and August 9, and that after Plaintiff requested to speak with a crisis team member, Lieutenant Shaw cursed at him and told him to kill himself, at which point Plaintiff began pounding his head on his cell door (Doc. 30, p. 5). Plaintiff also alleges that on August 19, 2013 and August 27, 2013, Corrections Officer Joseph returned all legal mail Plaintiff had sent out since July 31, 2013 (Doc. 30, p. 5).

Plaintiff also attached a letter from Warden Harrington, dated November 25, 2013, which explains that all privileged mail must be properly marked as "privileged" (Doc. 30, pp. 7-8). Plaintiff also attached a form titled "Offender Authorization for Payment," which is dated December 12, 2013 and marked "INSUFFICIENT FUNDS" (Doc. 30, pp. 9-10). Plaintiff has attached the envelope which was returned, addressed to Southern District Deputy Director Don Gaetz (Doc. 30, p. 10). And Plaintiff has provided an Order from a case which he has filed in the Northern District of Illinois, Widmer v. Mail Room Employee (Doc. 30, pp. 11-13).

Finally, Plaintiff filed a "2nd Amended Motion for Injunctive Relief" (which this Court will refer to as "Third Motion")(Doc. 33). In this pleading, Plaintiff requests that the Court "enjoin the defendants from continuing to obstruct [his] outgoing US legal and privileged mail which is correctly addressed and placed in the US institutional mail at Menard Correctional Center."

Plaintiff again alleges that his "outgoing, Legal and Privileged mail clearly marked as such, is being obstructed and returned to [him] by the defendants, who are citing 'insufficient funds' in some instances" (Doc. 33). Plaintiff additionally contends that he has a daily subscription to the

4

Bloomington Pantagraph Newspaper, and that his newspapers are withheld for 7 to 14 days before he receives them, while other prisoners receive newspapers in 2-3 days (Doc. 33). Plaintiff complains that his privileged mail addressed to "IDOC ARB, Elected Officials including Il. State Senators – Reps and the Governor of Illinois Pat Quinn" is not being mailed out "because [he is] indigent" (Doc. 33). Plaintiff notes that first-class U.S. mail addressed to him is delivered 11-21 days after the postmark date (Doc. 33). Plaintiff alleges that IDOC staff would testify to his allegations if called to testify.

    C.    <u>Analysis</u>

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *Mazurek v. Armstrong*, **520 U.S. 968, 972 (1997).** The plaintiff must show four elements for an injunction: (1) plaintiff is likely to succeed on the merits; (2) without an injunction irreparable harm against the plaintiff is likely; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Id.* The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Id.*

According to the Prison Litigation Reform Act (PLRA) injunctions in the prison context must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." **18 U.S.C. § 3626.** Courts may issue preliminary injunctions only on notice to the adverse party. **FED. R. CIV. P. 65(a)(1)**. A temporary restraining order may be issued without notice only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

**FED. R. CIV. P. 65(b)**

■      **FIRST MOTION – DOC. 15**

Plaintiff's First Motion has been brought against individuals who are not defendants in this case. Plaintiff names Corrections Officers Davis, Lindberg, and Kempfer, who are defendants in a separate case that Plaintiff has filed (13-cv-1131-MJR-DGW). While Plaintiff did name Corrections Officer Kempfer as a defendant in his amended complaint (Doc. 24), the Court severed Plaintiffs' claims against Kempfer into a separate case (Doc. 28). Therefore, Kempfer is no longer a defendant in the instant case. Simply put, none of the individuals named in Plaintiff's First Motion is a defendant in *this* case. Plaintiff is not entitled to equitable relief against non-defendants.

This would be sufficient to deny injunctive relief in itself. But the Court also points out that Plaintiff seeks injunctive relief for events that are unrelated to the sole issue in this case: obstruction of the Plaintiff's legal mail (Doc. 1). The merits of this case cannot be used to determine the likelihood of success on unrelated complaints. Failure to prove a likelihood of success on the merits is a failure to meet the threshold for a preliminary injunction. Accordingly, the undersigned **FINDS** that Plaintiff is not entitled to the injunctive relief that he seeks, as to his first motion seeking injunctive relief and **DENIES** Doc. 15.

■      **SECOND MOTION – DOC. 30**

Plaintiff's Second Motion for Injunctive Relief does at least relate to the claims present in this case. In this motion, Plaintiff claims to address the Court's previous finding that he did not meet his evidentiary burden on injunctive relief (Doc. 30). But some of the exhibits submitted by Plaintiff were available to him prior to the hearing. The Court held the hearing on October 9, 2013 (Doc. 14) regarding that earlier motion. The Court then denied Plaintiff's motion (Doc. 25). In support of his new Motion, Plaintiff submitted a "Request for Investigation" that he sent to the FBI on September 28, 2013 (Doc. 30, pp. 2-6). The Request reiterates some of the allegations

present in the Complaint, and also includes a timeline of events that occurred at Stateville Correctional center between July 31, 2013 and August 27, 2013 (Doc. 30, pp. 2-6).

As an initial matter, Plaintiff created this exhibit approximately 11 days prior to his hearing on injunctive relief, and therefore could have raised any facts or evidence contained therein at the hearing on October 9, 2013. The "Request for Investigation" speaks entirely to matters within Plaintiff's knowledge at the time of the hearing. The Court will not consider this exhibit now, because the matters it attests to were entirely available on the date of the first hearing.

Additionally, the fact that Plaintiff has requested an investigation from a third party is not relevant to his request for injunctive relief, because it does not go to the merits of his claims. Nor is this exhibit relevant generally. Plaintiff's claims in this case address events that happened at Menard Correctional Center; the exhibits testify to Plaintiff's treatment at Stateville at the hands of parties not named here. The claims are not the same. This exhibit is not relevant to Plaintiff's claims in this case and cannot be used as a basis for injunctive relief.

As to the correspondence Plaintiff received from Richard Harrington, the Warden of Menard, outlining Menard's mail policy[1] (Doc. 30, pp. 7-8), the policy is certainly relevant to this case. However, it is duplicative of evidence submitted at the earlier hearing, where Sara Dillman, the mailroom supervisor at Menard, testified about the policy regarding privileged and legal mail. Additionally, this letter does not go to the issue of whether the mail policy was followed by Defendants. It is also codified in IDOC's administrative regulations, and therefore was available to Plaintiff at the time of his earlier hearing. This evidence also does not show that Plaintiff is entitled to injunctive relief.

Plaintiff has also attached an envelope marked "Priv Mail," and a form indicating that it was returned due to insufficient funds (Doc. 30, pp. 9-10). However, 20 Ill. Adm. Code § 525.130 states:

---

[1] The letter, of course, is hearsay.

"Offenders with insufficient money in their trust fund accounts to purchase postage shall be permitted to send reasonable amounts of legal mail and mail to clerks of any court or the Illinois Court of Claims, to certified court reporters, to the Administrative Review Board, and to the Prisoner Review Board at State expense . . . ." Because the envelope Plaintiff has submitted was addressed to Southern District Deputy Director Don Gaetz (Doc. 30, pp. 9-10), and not to any of the persons or entities listed in § 525.130, the fact that the Plaintiff's letter was returned due to insufficient funds is not evidence that the Plaintiff's legal mail is being unlawfully obstructed. Finally, Plaintiff submitted a threshold order in one of his other cases (Doc. 30, pp. 11-13). The Order is irrelevant to the instant case and to Plaintiff's Second Motion.

Because all of the evidence Plaintiff tendered in support of his Second Motion was either available to the Plaintiff at the hearing on October 9, 2013 or is irrelevant to the instant case, the Court concludes that Plaintiff has not shown that he is likely to succeed on the merits. Accordingly, the undersigned **FINDS** that Plaintiff is not entitled to the preliminary injunction relief that he seeks and **DENIES** Doc. 30.

- ■ **THIRD MOTION – DOC. 33**

In his Third Motion, Plaintiff again asserts that his "outgoing, Legal and Privileged mail clearly marked as such, is being obstructed and returned to [him] by the defendants, who are citing 'insufficient funds' in some instances" (Doc. 33). Plaintiff contends that he has a daily subscription to the Bloomington Pantagraph Newspaper, and that his newspapers are withheld for 7 to 14 days before he receives them, while other prisoners receive their newspapers in 2-3 days (Doc. 33). Plaintiff further alleges that his privileged mail addressed to "IDOC ARB, Elected Officials including Il. State Senators – Reps and the Governor of Illinois Pat Quinn" is not being mailed out "because [he is] indigent." Finally, Plaintiff notes that first-class U.S. mail addressed to him is delivered 11-21 days after the postmark date.

The Third Motion for injunctive relief (a) again claims that Plaintiff has new evidence that he did not present at the original hearing and (b) raises new claims of interference with his mail. Plaintiff's contention that his first class mail and his newspapers (i.e. *non-privileged* and *non-legal* mail) are being delayed simply is not related to this case. The sole issue in this case is the opening of Plaintiff's privileged legal correspondence, not his non-legal mail. Moreover, Plaintiff's allegations as to delays of non-legal, non-privileged mail do not state a claim upon which relief can be granted. Short-term and sporadic delays in receiving mail are not actionable. **See Rowe v. Shake, 196 F.3d 778, 782 (7th Cir. 1999).**

Plaintiff also alleges that his "privileged mail continues to not be mailed out to IDOC ARB [and] Elected Officials . . . ." Plaintiff submits no proof on this point, he merely resubmits his correspondence with the Warden that he attached to his earlier motion regarding the mail policy at Menard (Doc. 33, pp. 4-5) According to 20 Ill. Adm. Code § 525.130 states, prisons are not required to send privileged mail addressed to elected officials at State expense when the prisoner lacks money for postage. Therefore, as to mail that is only privileged, and not legal, prisons have discretion as to whether to send such mail at their expense. Section 525.130 does provide that prisoners who cannot afford postage shall be allowed to send *reasonable* amounts of mail to the Administrative Review Board at State expense. But there is no evidence in Plaintiff's motion about how much privileged mail he is attempting to send, giving the Court no baseline on whether his amount is "reasonable." Plaintiff's allegations do not offer any further support for his request for injunctive relief.

Lastly, and perhaps most to the point, Plaintiff claims that he now has staff witnesses that will corroborate his claims. Plaintiff has not submitted any affidavits from any of his new proposed witnesses about their testimony. He believes that Sara Dillman, the mailroom supervisor, would testify about mail procedures. This is precisely what she did at the prior hearing, and the Court found that her testimony did *not* support an injunction.

The Court will not continually haul witnesses before it on the off chance that their testimony may become more favorable with repetition. Plaintiff had his crack at Defendant Dillman, and if he did not develop her testimony in the manner he wished on that occasion, that is his fault. Plaintiff insists that he needs Harrington and Godinez to testify about the mail policy. But Defendant Dillman already testified to the policy. Plaintiff has not alleged that Harrington and Godinez have personal knowledge of his allegations. Their testimony would merely be cumulative to what Plaintiff has already elicited. Plaintiff also asks that the two unknown mailroom employees be called to testify. But it is Plaintiff's responsibility to name them. To date, he has not done so. The Court cannot call witnesses it cannot identify. Simply put, the Court is not convinced that any of these new proposed witnesses could offer relevant testimony.

Plaintiff's third motion for injunctive relief does not raise constitutional issues, and Plaintiff has not presented new evidence that would justify holding another hearing on his injunctive claims here. Accordingly, the undersigned **FINDS** that Plaintiff is not entitled to the injunctive relief that he seeks and **DENIES** Doc. 33.

### D. Conclusion

For all these reasons, the Court **DENIES** Plaintiff's amended and supplemental motions for injunctive relief (Docs. 15, 30, and 33).

IT IS SO ORDERED

Dated February 28, 2014.

s/ Michael J. Reagan
Michael J. Reagan
United States District Judge
